IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:09-3674 |
| ALBERT FASE KALETA and KALETA CAPITAL MANAGEMENT, INC., *et al.*, | § § § § | |
| Defendants, | § § | |
| and | § § | |
| BUSINESSRADIO NETWORK, L.P. d/b/a BizRadio and DANIEL FRISHBERG FINANCIAL SERVICES, INC., d/b/a DFFS CAPITAL MANAGEMENT, INC., | § § § § § § | |
| Relief Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on certain BizRadio Noteholders' Motion to Modify Court's Bar Order and Request for Expedited Oral Hearing (the "Motion") [Doc. # 286].[1] Party in Interest David Wallace ("Wallace") and Court-Appointed

---

[1] The BizRadio Noteholders are identified in Exhibit A to the Motion [Doc. # 286-1].

Receiver Thomas L. Taylor, III (the "Receiver"), each filed Responses [respectively, Docs. # 289 and 290]. The Court held oral argument on September 24, 2015 (the "Hearing"). The Motion is ripe for determination. After considering the parties' briefing, all matters of record, and the applicable legal authorities, the Court **denies** the Motion.

## I.   BACKGROUND

In 2009, the Securities and Exchange Commission commenced an action against Albert Kaleta, Daniel Frishberg, and Kaleta Capital Management under the anti-fraud provisions of the federal securities laws.[2] The Court appointed Thomas L. Taylor, III, as Receiver for Defendant Kaleta Capital Management and Relief Defendants BusinessRadio Network, L.P. d/b/a BizRadio and Daniel Frishberg Financial Services, Inc. d/b/a DFFS Capital Management, Inc. ("Relief Defendants").[3] This case arose from claims associated with dealings by Wallace, Costa Bajjali ("Bajjali"), and affiliated entities (collectively, the "Wallace Bajjali Parties") in securities offerings and other transactions related to the Relief Defendants. After detailed analysis of potential claims of the Receivership Estate against the Wallace Bajjali Parties, evaluation of the associated risks and costs of

---

[2]   Complaint [Doc. # 1].

[3]   Agreed Order Appointing Receiver [Doc. # 7-1]; Order Modifying Order Appointing Receiver [Doc. # 34].

litigation, and assessment of the collectability of any judgment that might be obtained, the Receiver and the Wallace Bajjali Parties reached an agreement to settle the Receivership claims (the "Settlement Agreement"). On August 1, 2012, the Court entered an Order approving the Settlement Agreement,[4] concluding it provided a reasonable opportunity for the Receiver to maximize the recovery to the Receivership Estate while minimizing litigation risks and costs.[5]

The BizRadio Noteholders made loans to Relief Defendant BizRadio through the Wallace Bajjali Parties.[6] The Settlement Agreement includes a Bar Order, which restrains the BizRadio Noteholders from prosecuting claims against the Wallace Bajjali Parties related to those loans. Instead, the BizRadio Noteholders may "participate in the claims process for the Receiver's ultimate distribution of assets from the Receivership Estate."[7] The Bar Order was entered after the Court carefully considered and overruled numerous objections by the BizRadio Noteholders.[8] Before making its rulings, the Court reviewed *in camera*

---

[4] Order Approving Settlement and Entering Final Bar Order and Injunction [Doc. # 210].

[5] Memorandum and Order [Doc. # 170], at 5–6.

[6] *Id.*, at 3.

[7] *Id.*, at 9; Order Approving Settlement and Entering Final Bar Order and Injunction [Doc. # 210], at 4, § V.

[8] Memorandum and Order [Doc. # 170].

3

certain financial statements and documents from Wallace (the "Wallace Financial Affidavit") and Bajjali.[9]  The Fifth Circuit affirmed the Court's approval of the Settlement Agreement and the Bar Order.  *SEC v. Kaleta*, 530 F. App'x 360 (5th Cir. 2013).

Pursuant to the Settlement Agreement, two of the Wallace Bajjali Parties, LFW Fund and West Houston Fund (the "Funds"), executed two sets of notes (the "Notes"), all of which Wallace and Bajjali personally guaranteed (the "Guarantees").[10]  The Funds defaulted on the Notes in 2014.[11]  The Receiver instituted separate suits for breach of the terms of the Notes and he obtained a default judgment against LFW Fund and summary judgment against Bajjali.  The Receiver also sued West Houston Fund and Wallace on the Notes and Wallace's Guarantee.  Wallace and West Houston Fund initiated bankruptcy proceedings in March and April 2015, respectively.  These bankruptcies' automatic stays have prevented entry of judgment against these parties.

---

[9] *See* Index of Documents Delivered for *In Camera* Inspection [Doc. # 165].

[10] Details regarding the Notes and the Guarantees can be found in the Court's Memorandum and Order dated February 27, 2012 [Doc. # 170].

[11] A third entity, Spring Cypress Investments, L.P., also executed notes pursuant to the Settlement Agreement, which it paid in full in 2013, but its total liability was under $10,000.  *See* Status Report of the Receiver Dated July 16, 2014 [Doc. # 269], at 6.

The BizRadio Noteholders obtained relief from the automatic stay in the Bankruptcy Court to allow them to request modification of the Bar Order in this Court so they can challenge the dischargeability of and potentially pursue their claims in Wallace's individual bankruptcy proceeding.[12]  *See* Reply to Receiver [Doc. # 291], at 4, 7.

The BizRadio Noteholders contend that they should be relieved from the Bar Order because the materials the Court reviewed *in camera* and relied on in approving the proposed settlement contain "false and misleading" statements. Motion [Doc. # 286], at 3.  The Noteholders have not seen the materials submitted *in camera* in 2012 that contain the allegedly false and misleading statements. Instead, the Motion is based on information allegedly learned by or statements made by the Receiver regarding the Wallace Financial Affidavit, *see id.*, bankruptcy schedules filed by Wallace and various business entities in related bankruptcy proceedings after entry of the Bar Order (the "Bankruptcy Schedules," Motion, Exh. B [Doc. # 286-2]), and the BizRadio Noteholders' "beliefs" regarding alleged overvaluations of certain development projects in Amarillo and Joplin in the Wallace Financial Affidavit.  Motion [Doc. # 286], at 3.  The BizRadio Noteholders have also referred to allegations of misrepresentations

---

[12]   The Motion does not request relief regarding West Houston Fund, Bajjali, and LFW Fund.

regarding the probability of success of a potential IPO involving Wallace and Bajjali.  Reply to Wallace [Doc. # 292], at 5.

In response, the Receiver denies ever learning or stating "any such purported facts."  Receiver's Response [Doc. # 290], at 12.  The Receiver explains that he has compared the Bankruptcy Schedules to the original Wallace Financial Affidavit and found the original disclosures to be adequate.  *Id.*, at 12–13.  The Receiver also states that the Amarillo and Joplin projects were "always . . . considered prospective in nature" and that the "Settlement Agreement and Bar Order were not premised upon the success of those projects."  *Id.* at 13.

In considering this Motion, the Court again reviewed *in camera* the Wallace Financial Affidavit.  At the Hearing, the Court heard oral argument on the Motion, during which the parties clarified and narrowed the issues.

## II.    ANALYSIS

The BizRadio Noteholders request that the Court lift the Bar Order so they may pursue claims on their own behalf.  They seek relief pursuant to four subsections of Federal Rule of Civil Procedure 60 to modify the Bar Order: Rule 60(b)(3), (b)(5), (b)(6), and (d)(3).  The BizRadio Noteholders have not satisfied the requirements of any of these subsections.

### A.     Rule 60(b)(3)

Rule 60(b)(3) provides that a court may relieve a party from a final judgment or order where there was "fraud . . . , misrepresentation, or misconduct by an opposing party."  A motion pursuant to Rule 60(b)(3) must be brought within "no more than a year after the entry of the judgment or order."  FED. R. CIV. P. 60(c)(1).  The Court "must not extend" this one-year deadline.  FED. R. CIV. P. 6(b)(2).  The Court entered the Bar Order on August 1, 2012, which is more than three years before the BizRadio Noteholders filed their Motion.  The Rule 60(b)(3) argument is therefore time-barred and relief under that provision is denied.

### B.     Rule 60(b)(5)

Rule 60(b)(5) provides that a court may relieve a party from a final judgment or order where "applying [the judgment or order] prospectively is no longer equitable."  Rule 60(c)(1) allows Rule 60(b)(5) motions to be made within a "reasonable time" of the final judgment or order.  Here, the BizRadio Noteholders rely most heavily on events within the last year, so their Rule 60(b)(5) arguments are timely.

Rule 60(b)(5) requires that the BizRadio Noteholders show a change in circumstances that creates conditions sufficiently inequitable to outweigh the policy in favor of finality of judgments.  *See Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 651 (S.D. Tex. 2009) (Rosenthal, J.) ("The inquiry

7

[under Rule 60(b)(5)] . . . is whether the changes are so important that dangers [the injunction was designed to prevent], once substantial, have become attenuated to a shadow. No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify . . . saying that they are the victims of oppression." *Id.* (quoting *United States v. Swift*, 286 U.S. 106, 119 (1932))); *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005) ("The purpose of Rule 60(b) is to balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of all the facts.").[13] Equity grants the Court flexibility to weigh factors as relevant to a particular case, but "in private commercial litigation[,] the need for finality of judgments and the sanctity of bargains" will be particularly "important." 12-60 MOORE'S FEDERAL PRACTICE - CIVIL § 60.47 (3d ed. 2015). The BizRadio Noteholders have failed to show that the balance of the equities has tipped in their favor.

---

[13]  *See Valentine Sugars, Inc. v. Sudan*, 34 F.3d 320, 322 (5th Cir. 1994) ("Modification is only cautiously to be granted; that the dangers which the decree was meant to foreclose must almost have disappeared; that hardship and oppression, extreme and unexpected are significant; and that the movant's task is to provide close to an unanswerable case." (quoting *Roberts v. St. Regis Paper Co.*, 653 F.2d 166, 173 (5th Cir. Unit B 1981))); *W.L. Gore & Assocs. v. C.R. Bard, Inc.*, 977 F.2d 558, 561 (Fed. Cir. 1992) ("Lest the finality of judgments and the policy of ending litigation be unduly impeached, such modification requires not only that circumstances have changed, but that unexpected hardship and inequity have resulted.").

8

At the Hearing, counsel for the BizRadio Noteholders advanced three theories for finding the Bar Order inequitable: (1) Wallace, Bajjali, and the Funds have not paid on the Notes,[14] (2) the basis for the Settlement Agreement was "questionable" from the beginning, and (3) there have been "shenanigans" regarding the information provided to the Court.[15] The BizRadio Noteholders further contend that modification would be equitable because Wallace has significant future earning capacity, which would permit the BizRadio Noteholders to recover on their claims, which they assert are worth $30 million.

### 1. Previously Litigated Arguments

The Court has previously ruled on several of the BizRadio Noteholders' arguments. Rule 60(b) does not permit the Court to revisit the merits of its earlier findings. *See Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 157 (5th Cir. 2004) (explaining that a party "may not use a Rule 60(b) motion as an occasion to

---

[14] *See, e.g.*, Reply to Receiver [Doc. # 291], at 5 ("[T]he Bar Order was intended to advance the Receiver's goal of 'collect[ing] as many assets as possible for distribution among all defrauded investors.' This goal was frustrated by the breach of the settlement agreement wherein the Receiver has collected nothing while unjustly depriving the Noteholders of their rights to pursue same."); Reply to Wallace [Doc. # 292], at 3 ("The Bar Order is now being used as a sword to gut the BizRadio Noteholders claims, as well as the Receiver's efforts to collect on behalf of all stakeholders . . . .").

[15] The BizRadio Noteholders did not advance the second and third grounds under the auspices of Rule 60(b)(5) in their briefing. In any event, in the interest of justice, the Court will consider these arguments under the Rule 60(b)(5) theory.

9

relitigate its case"). The BizRadio Noteholders raised the issue of Wallace's future earning capacity in their Objections to the Settlement Agreement and in their Motion for Reconsideration of the Court's Order overruling the objections.[16] The Court twice rejected the argument as speculative.[17]

Now, as in 2012, some of BizRadio Noteholders' claims are not subject to the Bar Order, as explained by the Receiver.[18] The BizRadio Noteholders have not

---

[16] Investor's Objection to Receiver's Motion for Order Approving Proposed Settlement and for Ancillary Orders [Doc. # 124], at 3; Investors' Motion for Reconsideration of Order Approving Settlement with the Wallace Bajjali Parties and Request for Evidentiary Hearing [Doc. # 179], at 3 (claiming that Wallace and Bajjali "expect to have unencumbered assets in excess of $30 million each within five months of the settlement").

[17] *See* Memorandum and Order [Doc. # 170], at 19–20 ("The Objectors have not established with any specificity . . . the extent of Messrs. Wallace and Bajjali's potential future earnings."); Hearing Minutes and Order [Doc. # 209] (denying the BizRadio Noteholders' Motion for Reconsideration [Doc. # 179]).

[18] *See* Memorandum and Order [Doc. # 170], at 21 ("The Court concludes that the Objectors' claims arising from 'real estate' or 'equity investment' transactions would not be barred by the Bar Order . . . ."); September 24, 2015 Hearing. The BizRadio Noteholders do not explain in any detail or substantiate their valuation of their potential claims that are enjoined by the Bar Order. *See, e.g.*, Reply to Receiver's Response [Doc. # 291], at 4 (reciting nature of claims without citation to record); *see also* Memorandum and Order [Doc. # 170], at 21 ("[T]he Objectors' have failed to provide factual detail, evidence, or meaningful analysis of the value or likelihood of success of their alleged claims against the [Wallace Bajjali] Parties."). It is noted that the BizRadio Noteholders' representations regarding the value of their claims has changed with each round of briefing challenging the Settlement Agreement. At the Hearing, counsel for the BizRadio Noteholders referenced claims worth up to $30 million. At the time of the Motion for Reconsideration, the BizRadio Noteholders only valued their claims at $20 million. *See* Doc. # 179, at 2. In their original Objections, they valued their

(continued…)

shown that circumstances have changed regarding their potential claims generally, or against Wallace, that are subject to the Bar Order.

The BizRadio Noteholders' contention that the basis for the Settlement Agreement was "questionable" similarly retreads familiar ground in contravention of Rule 60(b). The Court recalls the complex, fact-intensive and costly claims the Receiver considered asserting against Wallace (and affiliated entities). Any settlement had to be viewed in context. Litigation risk and expense to prosecute these claims were substantial. Collection of any recovery was also expected to be costly and difficult. The Court determined that the Settlement Agreement was sufficiently favorable to the Receivership and claimants, including the BizRadio Noteholders, to warrant approval. The Court nevertheless also recognized in 2012 that Wallace's financial circumstances were questionable. The Court has carefully reviewed the evidence it had before it in 2012 regarding Wallace's financial condition. It was clear that Wallace and Bajjali, had several large *potential* projects, but they were at very early stages and were, by definition, speculative. Included here were the nascent business ventures in Amarillo and Joplin and the potential IPO. Wallace disclosed he held numerous but not necessarily lucrative

---

(continued…)
claims at around $15 million. *See* Doc. # 124, at 3. Moreover, it is not apparent how the prospects of collection on any judgments have improved over time.

personal assets and investments at the time. The Court recognized the risks inherent in collection under the Settlement Agreement, but found that those risks were acceptable under the circumstances, because a settlement that confirmed and liquidated the Wallace Bajjali Parties' liability on various complex litigation theories was advantageous to prolonged, risky, and, likely, expensive, litigation of the Receivership Estate's claims against these defendants.[19]  Rule 60(b)(5) is not a vehicle to second-guess those rulings.

### 2. Alleged False and Misleading Statements

The BizRadio Noteholders also contend that Wallace made false and misleading statements in 2012 and thus continued enforcement of the Bar Order is inequitable. The BizRadio Noteholders focus on three alleged misstatements. None of these theories holds merit.

First, the BizRadio Noteholders point to Wallace's interest in a skating rink. Review of the record has revealed there was adequate disclosure of Wallace's interest in the entity that owns the asset.[20]

---

[19]   *See* Memorandum and Order [Doc. # 170], at 15 ("The Receiver . . . establishes without contradiction that the agreed quantification of these obligations is a material benefit to the Receivership Estate because the WB/KCM Note transactions were 'chaotic and poorly documented' and 'not readily susceptible to proof' and there are possible defenses that could be raised to complicate the litigation.").

[20]   At the Hearing, the Receiver explained that he had been surprised by the disclosure of Wallace's interest in an "ice skating rink" on the Bankruptcy
(continued…)

Second, the BizRadio Noteholders speculate about possible discrepancies between the Wallace Financial Affidavit and the Wallace Bankruptcy Schedules. The Court credits the Receiver and his counsel's statements that the Receiver's close comparison of these materials revealed no material differences.[21]

Third, the BizRadio Noteholders claim that Wallace overstated the value of the Amarillo and Joplin projects and the likelihood of an IPO. The record is clear that Wallace's submissions made apparent, and both the Court and the Receiver were well aware of, the many contingencies relating to those projects, which contingencies made the projects' outcome and profitability uncertain.[22] The

---

(continued…)
Schedules, which he did not recall from the Wallace Financial Affidavit. Upon further review, the Receiver determined that this interest had been disclosed in a different way in the Wallace Financial Affidavit.

[21] At the Hearing, Bankruptcy counsel for the Receiver explained that the Receiver had considered whether there were any false or misleading statements in Wallace's financial disclosures that would, for example, enable the Receiver to request that the Notes could be non-dischargeable debt pursuant to section 523 of the Bankruptcy Code. Counsel, with non-verbal endorsement by the Receiver at the Hearing, stated that there were no such arguments that met the standards of Federal Rule of Civil Procedure 11. *See also* Receiver's Response [Doc. # 290], at 13.

[22] The Court and the Receiver's reliance on proceeds of the Amarillo and Joplin projects was secondary under the Settlement Agreement. It was hoped that these projects could provide funds for the "Cash Flow Notes," which were negotiated as "*additional* consideration" for the Settlement Agreement. *See* Memorandum and Order [Doc. # 170], at 8 (emphasis added); *see also* Receiver's Response [Doc. # 290], at 13–24.

BizRadio Noteholders have not shown that any misrepresentations by Wallace that render continued enforcement of the Bar Order inequitable.

### 3. Nonpayment of the Notes and Guarantees

The BizRadio Noteholders' argument that the nonpayment of the Notes and Guarantees is a basis for Rule 60(b)(5) relief is similarly unavailing. The Receiver accepted certain risks inherent in the Settlement Agreement as a tradeoff for eliminating other litigation difficulties. The Wallace Bajjali Parties' failure to perform according to the Settlement Agreement and the bankruptcy filings by some of these parties are among the risks of any contract with parties with limited liquid and/or illiquid assets, particularly at a time when the country was trying to overcome a major financial recession, as in 2012. The Settlement Agreement has not been shown to be inequitable.

The Receiver is aware the Settlement Agreement with Wallace and the other Wallace Bajjali Parties has not been particularly successful thus far. But the Receiver has not abandoned his efforts to obtain funds from these parties for the Receivership Estate. The Receiver currently seeks to collect on the Notes and Guarantees in new actions. Receiver's Response [Doc. # 290], at 6–7. He has obtained a default judgment against LFW Fund and summary judgment against Bajjali. He is pursuing the Receivership's rights as a creditor in various bankruptcy proceedings.

The BizRadio Noteholders assert that some of their claims against the Wallace Bajjali Parties are non-dischargeable because the claims are grounded in fraud theories. They contend that they and the Receiver could obtain more from Wallace individually under these putative fraud claims than they will obtain through the Receivership based on the Settlement Agreement's Notes and Wallace's Guarantee, which are dischargeable obligations in bankruptcy. For reasons explained above, this contention is pure speculation.[23] The Receiver persuasively responds that, without the Bar Order, the settlement agreement would fall apart due to lack of consideration, and would require relitigation of the settled

---

[23]   As noted above, if the BizRadio Noteholders were to pursue their claims, they would face the same proof and evidentiary problems that persuaded the Receiver and the Court that the Settlement Agreement's liquidated and quantified Notes were superior to litigating complex inchoate or speculative claims, and then trying to collect any judgment.

Furthermore, the BizRadio Noteholders thus far appear to rely only on the Court's finding that they lacked a perfected security interest in the BizRadio properties. *See* Reply to Receiver [Doc. # 291], at 4 & n.1 ("The Court all but agreed with [the] fact [that the BizRadio Noteholders would have a suit against the Wallace Bajjali Parties] in connection with the sale of the Radio State assets to Salem Coummications [*sic*], by denying the Noteholders' security interest and equitable subrogation arguments on the basis that David Wallace and WB Development Partners failed to comply with their responsibility to perfect the security interest."). The Court's comments obviously were not definitive rulings on Wallace and WB Development Partners' responsibilities or potential liabilities. *See* Memorandum and Order [Doc. # 156].

claims, which expense the Receivership Estate cannot afford.[24] More litigation, at best, would result in a "Pyrrhic victory." Receiver's Response [Doc. # 290], at 16. It is important to keep litigation expenses to a minimum to salvage funds for a pro rata distribution to *all* creditors of the Receivership Estate.[25] In any event, the BizRadio Noteholders may continue to seek recovery on their other claims against Wallace (and others).

The Court was aware of the financial circumstances of the Wallace Bajjali Parties at the time the Settlement Agreement was approved. While the Settlement Agreement may not turn out to be lucrative, it was negotiated and concluded as an arms-length transaction. The interests of finality of judgments and the equities generally dictate that the Settlement Agreement, including the Bar Order, should remain in place and the Receiver's pending suits to collect on the Notes be allowed to proceed as permitted under federal, state, and bankruptcy laws. The BizRadio Noteholders' contentions that Rule 60(b)(5) warrants the lifting of the Bar Order

---

[24] Although the BizRadio Noteholders have only requested modification of the Bar Order regarding the Wallace Bankruptcy Proceedings, *see* Motion [Doc. # 286], at 6–7, the Court is aware the BizRadio Noteholders apparently intend to seek similar relief in other bankruptcies.

[25] *See* Memorandum and Order [Doc. # 170], at 22 (noting that "there are many others who also claim to have suffered serious losses and damages" and "where investors are similarly defrauded, equity favors treating them alike").

and that the Court should permit them to pursue their individual Biz-Radio-based claims against Wallace and others is rejected.

### C. Rule 60(b)(6):

Rule 60(b)(6) provides that a court may relieve a party from a final judgment or order for "any other reason that justifies relief." A motion pursuant to Rule 60(b)(6) must be made within a "reasonable time" after the judgment or order. FED. R. CIV. P. 60(c)(1). Rule 60(b)(6), however, cannot be used to circumvent the rest of Rule 60's time limits. If a motion under Rule 60(b)(6) is properly brought under a different subsection of Rule 60(b), it therefore cannot also be brought under Rule 60(b)(6). *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989) (per curiam) ("We have held that 'Relief under subsection (6) is not available to a movant where . . . the relief sought would have been, if not for the Rule's time limits, within the coverage of another of the subsections of the Rule.'" (quoting *Kerwit Med. Prods., Inc. v. N&H Instruments, Inc.*, 616 F.2d 833, 836 n.8 (5th Cir. 1980))). The BizRadio Noteholders' allegations of false and misleading statements by Wallace and Bajjali plainly fall within the ambit of Rule 60(b)(3) or 60(b)(5). The Court has already held that the BizRadio Noteholders' Rule 60(b)(3) arguments are time-barred and that they have not shown inequitable circumstances under Rule 60(b)(5). Relief under Rule 60(b)(6) is denied.

**D.     Rule 60(d)(3)**

Rule 60(d)(3) preserves a court's power to "set aside a judgment for fraud on the court." Unlike Rule 60(b)(3), Rule 60(d)(3) is not time-limited. The standard for "fraud on the court," however, requires a showing of "the most egregious misconduct" to warrant relief. "Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978). The BizRadio Noteholders rely on allegations of false and misleading statements which, even if proved, do not "rise to the level of fraud on the court," so relief under Rule 60(d)(3) is denied.

**III.   CONCLUSION AND ORDER**

Based on the foregoing, the Court concludes that the BizRadio Noteholders have failed to show that the Bar Order should be modified pursuant to Federal Rule of Civil Procedure 60. Accordingly, it is hereby

**ORDERED** that BizRadio Noteholders' Motion to Modify Court's Bar Order and Request for Expedited Oral Hearing [Doc. # 286] is **DENIED**.

SIGNED at Houston, Texas this 29th day of September, 2015.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

P:\ORDERS\a2008-2009\2009\3674MModify.docx   150929.1521